Filed 12/4/24  P. v. Rodriguez CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B332170 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA066113) |
| v. | |
| DANIEL RODRIGUEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Victor D. Martinez.  Reversed.

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

In 2004, a jury convicted Daniel Rodriguez and a codefendant of attempted murder. Rodriguez now appeals from an order denying his petition for resentencing under Penal Code section 1170.95.[1] The trial court concluded Rodriguez failed to make a prima facie showing of eligibility for resentencing relief. We reverse the order denying Rodriguez's petition because the jury was instructed on the natural and probable consequences doctrine and the record of conviction does not conclusively establish that he is ineligible for relief as a matter of law.

## FACTS AND PROCEDURAL BACKGROUND

### *The Underlying Offense*[2]

One afternoon in April 2004, Rodriguez and Yesica Maribel Cambero stopped in a van near a house in the Valinda area of

---

[1]     All further undesignated statutory references are to the Penal Code.

Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We therefore refer to the statute as section 1172.6 for the remainder of this opinion.

[2]     We derive the factual background relating to the underlying offense from the Court of Appeal opinion affirming the judgment of conviction for both defendants. (*People v. Cambero* (May 15, 2006, B180030) [nonpub. opn.] (*Cambero*).) "Prior appellate opinions that are part of a section 1172.6 petitioner's 'record of conviction,' which were once admissible for whatever weight the court wished to give them at a merits hearing under former section 1170.95—including for their recitations of fact [citation]—may now be considered only for their 'procedural history.' " (*People v. Davenport* (2023) 95 Cal.App.5th 1150, 1159–1160, fn. 5.) We, thus, reference the factual portion of the

Los Angeles County. Isauro Rodriguez[3] was walking up to the front door of the house. Rodriguez got out of the van and approached Isauro with a revolver in his hand. Isauro ran away and heard a gunshot. Rodriguez caught up to Isauro and shot him several times. Rodriguez and Cambero then drove away in the van. Two witnesses, including Cambero, testified that two males had run from the van after the van passed a sheriff's patrol car in the wake of the shooting.

### The Underlying Proceedings

The People charged Rodriguez and Cambero jointly with attempting to murder Isauro. The amended information alleged in count 1 that the attempted murder was committed willfully, deliberately, and with premeditation. (§§ 664, 187, subd. (a).) As to both the attempted murder, as well as a charge of unlawfully driving a vehicle asserted only against Cambero, the amended information charged both crimes with being committed for the benefit of a criminal street gang. (§ 186.22, subd. (b).) It further alleged that "a principal and Defendant Rodriguez[4] personally and intentionally discharged a firearm . . . caus[ing] great bodily injury and [*sic*] death to Isauro Rodriguez" within the meaning of section 12022.53, subdivisions (d) and (e)(1). Moreover, it was

---

*Cambero* appeal only "for background purposes and to provide context for the parties' arguments." (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2.)

[3] For the sake of clarity we refer to Isauro by first name only. No disrespect is intended.

[4] This additional reference to Rodriguez by name was added by interlineation, by means of an anonymous, undated handwritten notation.

alleged "that in the commission and attempted commission of the above offense [referencing the attempted murder in count 1] a principal in said offense was armed with a firearm[] . . . within the meaning of . . . section 12022(a)(1)."

Rodriguez and Cambero were jointly tried. At trial, the court instructed the jury on general principles of aiding and abetting liability (CALJIC Nos. 3.00, 3.01), the natural and probable consequences doctrine (CALJIC No. 3.02), attempted murder (CALJIC No. 8.66), and attempted willful, deliberate, and premeditated attempted murder (CALJIC No. 8.67). The court further instructed the jury that although the evidence indicated that an unjoined perpetrator "may have been involved in the crime," the jury should not discuss or speculate as to why that person was not being prosecuted. (CALJIC No. 2.11.5.)

The jury convicted Rodriguez and Cambero of attempted murder. It found true allegations that the crime was committed willfully, deliberately, and with premeditation. On Rodriguez's verdict form, the jury also found true that, "in the commission and [*sic*] attempted commission of [the crime of attempted murder] . . . Daniel Rodriguez[] personally and intentionally discharged a firearm" causing great bodily injury within the meaning of section 12022.53, subdivision (d) and that "a principal in [the offense of attempted murder], Daniel Rodriguez, was armed with a firearm" within the meaning of section 12022, subdivision (a)(1). As reflected in Cambero's verdict form,[5] the jury found true that "in the commission and [*sic*] attempted commission of [the crime of attempted murder]" "a principal in

---

[5]     We grant respondent's amended request for judicial notice as to the jury's completed verdict form for codefendant Cambero. (Cal. Rules of Court, rule 8.252(a)(2)(C); Evid. Code, § 459.)

4

said offense[] personally and intentionally discharged a firearm" and that "a principal in [the offense of attempted murder], Daniel Rodriguez, was armed with a firearm" within the meaning of section 12022, subdivision (a)(1). The jury also found true the gang allegations as to both defendants. The trial court sentenced Rodriguez to 60 years to life. Rodriguez and Cambero appealed the judgments entered against them. Another panel of this court affirmed the judgments with modifications. (*Cambero, supra*, B180030).

## *Rodriguez's Petition for Resentencing*

In 2022, Rodriguez filed a pro per petition for resentencing under section 1172.6, alleging he could not presently be convicted of attempted murder because of changes to sections 188 and 189.

The People's opposition attached the preliminary hearing transcript, the jury instructions, and the verdict as to Rodriguez. The opposition argued that Rodriguez was ineligible for resentencing because the jury findings established that he was the actual shooter and that he acted with the intent to kill. The People also contended that the jury instructions and verdict established that the jury did not convict Rodriguez based on any theory of imputed malice. The opposition did not acknowledge or address the fact that the jury was instructed on the natural and probable causes doctrine.

Rodriguez filed a reply through counsel contending that the court may not consider the preliminary hearing transcript because it is not part of the record of conviction when the defendant was convicted by a jury. Rodriguez also argued that the record of conviction did not conclusively establish he was ineligible for resentencing because the jury was instructed on the natural and probable consequences doctrine and the jury

5

instructions and verdict did not foreclose the possibility that the jury relied on that theory to find him guilty.

In July 2023, the trial court heard argument and denied Rodriguez's petition.  The court noted that "the verdict forms for the codefendant" indicated that the jury found true that "Rodriguez possess[ed] the gun and discharg[ed] it or the principal discharged the gun," and that Rodriguez's verdict form reflected the jury's true finding that Rodriguez "actually possessed [the gun] and discharged it."  The court therefore reasoned:

"Then if you go back to 8.67, the CALJIC instruction, because Mr. Rodriguez is the would-be slayer, he's the one who fired the gun, he's the one who caused great bodily injury, the jury would have had to have found that he had the intent to kill, and because of that, just on the verdict forms themselves, there is enough without going into the underlying facts which, as the people point out, clearly show that he was the one who was the one who had the intent to kill, but I don't even have to go there because the record, verdict forms themselves show that the jury had to have found that he was — was the would-be slayer who had intent to kill.

"Because he is the would-be slayer, natural, probable consequence would not apply to him whatsoever because that only applies to [an] aider and abettor, which is what they use[d] to get the codefendant."

6

The court therefore concluded Rodriguez failed to make a prima facie showing that he was eligible for resentencing under section 1172.6 and denied his petition.

Rodriguez timely appealed.

## DISCUSSION

### I. Senate Bill Nos. 1437 and 775 and Section 1172.6

Senate Bill No. 1437 (2017–2018 Reg. Sess.) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and limited the scope of the felony murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) The bill amended section 188 by adding the requirement that, except as stated in section 189, subdivision (e), "to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Among other things, Senate Bill No. 775 expanded Senate Bill No. 1437's mandate by eliminating the natural and probable consequences doctrine as a means of finding a defendant guilty of attempted murder. (§ 1172.6, subd. (a).) However, a principal in a murder or attempted murder, including an aider or abettor, can still be criminally liable if found to personally possess malice aforethought, whether express or implied. (*People v. Silva* (2023) 87 Cal.App.5th 632, 639–640.)

Senate Bill Nos. 1437 and 775 created a procedure, now codified at section 1172.6, to allow a person convicted of murder, attempted murder, or manslaughter under the former law to seek resentencing if the person could no longer be convicted under amended section 188. (*Lewis, supra,* 11 Cal.5th at p. 959.) A defendant starts the procedure by filing a petition containing a

7

declaration that, among other things, he or she could not presently be convicted of murder under the current law.  (*Strong*, *supra*, 13 Cal.5th at p. 708.)  In relevant part, the statute requires the court, "[a]fter the parties have had an opportunity to submit briefings," to "hold a hearing to determine whether the petitioner has made a prima facie case for relief.  If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c).)

"[T]he 'prima facie bar was intentionally and correctly set very low.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.)  At this stage, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Id.* at p. 971.)  "While the trial court may look at the record of conviction . . . to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited." (*Ibid.*)  Courts may not reject the petitioner's allegations " 'on credibility grounds' " or engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at pp. 971–972.)  Rather, "[t]he record should be consulted at the prima facie stage only to determine 'readily ascertainable facts,' such as the crime of conviction and findings on enhancements." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815; see, e.g., *People v. Harden* (2022) 81 Cal.App.5th 45, 54–56 [considering jury instructions and verdicts to determine whether defendant made prima facie showing of eligibility]; *People v. Ervin* (2021) 72 Cal.App.5th 90, 106–111 [considering sentencing enhancements, jury

instructions, closing arguments, and verdicts at prima facie stage].)

We review de novo a trial court's denial of a resentencing petition at the prima facie stage. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

## II. Rodriguez is Entitled to an Evidentiary Hearing Because the Record of Conviction Does Not Conclusively Show He is Ineligible for Resentencing as a Matter of Law

Rodriguez argues that the record of conviction does not establish that he is ineligible for resentencing as a matter of law. We agree.

In his petition, Rodriguez alleged that he could no longer be convicted of attempted murder because of changes to sections 188 and 189. Specifically, Rodriguez argues he is eligible for resentencing because the jury may have convicted him under the natural and probable consequences doctrine. At the prima facie stage, we accept these factual allegations as true unless the record of conviction conclusively establishes Rodriguez is ineligible for relief. (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

At trial, CALJIC No. 3.00 instructed the jury that the "principals" of a crime are "equally guilty," "regardless of the extent or manner of participation" and include direct perpetrators as well as aiders and abettors. CALJIC No. 3.01 explained that the jury could convict a person of aiding and abetting a crime if it found that the person aided, promoted, encouraged, or instigated the commission of the crime. In particular, CALJIC No. 3.02 instructed the jury that it could find "the defendant" guilty of attempted murder if it found (1) that an assault with a firearm was committed, (2) that "the defendant"

9

aided and abetted the assault, (3) that a co-principal committed attempted murder, and (4) that the attempted murder was a natural and probable consequence of the assault. The term "defendant" was defined, through CALJIC No. 1.11, to mean "each defendant." CALJIC Nos. 8.66 and 9.02 instructed the jury that "[e]very person" who commits attempted murder or assault with a firearm is guilty of those crimes, respectively. Moreover, though CALJIC No. 8.66 began by mentioning both defendants— "Defendants are accused . . . of attempted murder"—it referenced only a single defendant when describing who must harbor the murderous intent, instructing that the jury must find that "[t]he person committing the [direct but ineffectual] act harbored express malice aforethought . . . . " The jury was also informed, through CALJIC No. 2.11.5, that "a person other than a defendant was or may have been involved in the crime for which that defendant is on trial."

Together, these instructions allowed the jury to convict Rodriguez of attempted murder if it found that Rodriguez aided and abetted an assault with a firearm committed by another person, that a coprincipal (such as the unjoined perpetrator) committed attempted murder, and that the attempted murder was the natural and probable consequence of the assault.

The court also instructed the jury on still-valid theories of attempted murder based on direct liability (CALJIC No. 8.66) and direct aider and abettor liability (CALJIC No. 3.01). However, neither the instructions nor the verdict form indicates what theory the jury relied on in finding Rodriguez guilty of attempted murder. The record therefore does not foreclose possibility that Rodriguez was convicted of attempted murder under the natural and probable consequences doctrine.

Respondent argues that Rodriguez is ineligible for resentencing relief because he was the only shooter, citing the jury's finding "only as to appellant" that he personally used and discharged a firearm causing great bodily injury. (§ 12022.53, subd. (d).) The trial court similarly concluded that this finding established that Rodriguez was necessarily the sole "would-be slayer." We disagree. We acknowledge that the record before us on appeal strongly suggests that the prosecution's theory at Rodriguez's and Cambero's trial was that Rodriguez, and not Cambero, possessed and discharged a firearm. However, that record does not include the trial transcripts and arguments of counsel at trial, nor does it reflect the role (if any) of the uncharged perpetrator.[6] Indeed, the amended information suggested through an undated, handwritten interlineation the possibility that another "principal" in addition to Rodriguez personally and intentionally discharged a firearm. As such, the record before us does not conclusively refute, without engaging in impermissible " 'fact finding involving the weighing of evidence,' " that Rodriguez was convicted under the alternative natural and probable consequences theory, especially in light of the CALJIC Nos. 2.11.5 and 3.02 instructions that were provided to Rodriguez's jury. (*Lewis, supra*, 11 Cal.5th at p. 972).

Respondent asserts that it is "undisputed that there were only two principals to the crime, and only one of them fired shots

---

[6]     "[A] charging decision does not establish any facts as a matter of law. [Citation]. Moreover, we are aware of no authority requiring prosecutors to try all codefendants together, so [a] single charging document does not foreclose the possibility of other people having been charged for related crimes." (*People v. Estrada* (2024) 101 Cal.App.5th 328, 339.)

at the victim." However, the record before us is inadequate to support this contention, which, as discussed, also does not include the trial transcripts. To the extent respondent contends that the preliminary hearing transcript could support that Rodriguez and Cambero were the only principals and that Rodriguez was the sole shooter, we disagree. To begin with, in assessing a section 1172.6 petition, the court may consult the record of conviction (*Lewis*, *supra*, 11 Cal.5th at p. 971), which includes the preliminary hearing transcript when "the conviction resulted from a guilty plea rather than a trial" and "the transcript 'reliably reflect[s] the facts of the offense for which the defendant was convicted.' " (*People v. Pickett* (2023) 93 Cal.App.5th 982, 988, review granted Oct. 11, 2023, S281643.)[7] In contrast, where, as here, the conviction resulted from a jury trial after a not guilty plea, the preliminary hearing transcript is not part of the record of conviction because it does not necessarily reflect the evidence on which the verdict was based. (*People v. Houck* (1998) 66 Cal.App.4th 350, 356–357.)[8] Unlike a guilty plea after a preliminary hearing, the transcript of which a defendant may stipulate to as providing a factual basis therefor, a "plea of not guilty puts in issue every material allegation of the accusatory

---

[7] Our Supreme Court granted review in a similar case to determine whether a trial court may rely on a preliminary hearing transcript at the prima facie stage. (*People v. Patton* (2023) 89 Cal.App.5th 649, review granted June 28, 2023, S279670.)

[8] On appeal, Rodriguez argues that the trial court erred in relying on the preliminary hearing transcript. However, the trial court explained that its ruling did not depend on "the underlying facts."

pleading . . . ," which, in Rodriguez's case, was the amended information. (§ 1019.) And secondly, as discussed *ante*, the transcript of Rodriguez's preliminary hearing, as underscored by the subsequently added language to the amended information and CALJIC No. 2.11.5, suggests some involvement of an additional unjoined perpetrator. Thus, although the record on appeal includes the transcript of the preliminary hearing, our decision is based solely on the amended information, jury instructions and verdict forms.

Relatedly, we reject respondent's argument and the trial court's conclusion that Rodriguez is ineligible for resentencing because the jury's findings under CALJIC No. 8.67 establish that he intended to kill. (*People v. Coley* (2022) 77 Cal.App.5th 539, 548 [an appellant convicted of attempted murder is ineligible for resentencing if the record of conviction shows that he or she harbored malice].) CALJIC No. 8.67 informed the jury that if it found any defendant guilty of attempted murder, it must then determine whether "the would-be slayer" committed that crime willfully, deliberately, and with premeditation. The jury found this allegation true.[9] Yet, as we have discussed, the record of conviction does not establish as a matter of law, without engaging in further fact finding involving the weighing of evidence, that Rodriguez was the one and only shooter. Without the trial transcript, we cannot eliminate the possibility that the jury may

---

[9] This finding was the second one listed on the verdict forms for Rodriguez and Cambero, right below the first finding that each one was guilty of "attempted murder." However, whereas the first finding specifically listed Rodriguez and Cambero, respectively, by name, the second did not, requiring only a finding that "the attempted murder was committed willfully, deliberately and with premeditation . . . ."

13

have found that the unjoined perpetrator, and not Rodriguez, was the "would-be slayer" who intended to kill. The jury's finding under CALJIC No. 8.67 therefore does not conclusively establish that Rodriguez harbored the requisite malice. (*People v. Whitson* (2022) 79 Cal.App.5th 22, 33 [reversing denial of petition for resentencing at the prima facie stage because jury verdict did not indicate which of two codefendants was the "would-be slayer" and therefore a true finding under CALJIC No. 8.67 did not establish that appellant intended to kill].)

Rodriguez argues that the jury's finding that he personally discharged a firearm causing great bodily injury under section 12022.53, subdivision (d) is not dispositive of any particular mental state, and, thus, does not justify denying a resentencing petition at the prima facie stage, citing *People v. Offley* (2020) 48 Cal.App.5th 588, 598: "Section 12022.53, subdivision (d) . . . is . . . a general intent enhancement, and does not require the prosecution to prove that the defendant harbored a particular mental state as to the victim's injury or death. [Citations.]" Respondent, in turn, argues Rodriguez's firearm enhancement is not relevant to intent but rather to "show the jury could not have relied on the natural and probable cause [*sic*] doctrine to convict [defendant]," asserting "only one person had a firearm." As such, respondent claims *Offley* is distinguishable because, unlike *Offley*, "it was undisputed that there were only two principals to the crime, and only one of them fired shots at the victim." Respondent also relies on the jury finding as to Cambero that she was only guilty of a principal's gun use. As discussed, other than the jury's true finding that Rodriguez, and not Cambero, personally discharged a firearm causing injury, respondent has not provided an adequate record to support the conclusion that

14

Rodriguez was the one and only person who shot at the victim. This conclusion cannot be made based on the record of conviction before us without engaging in impermissible factfinding, which we decline to do.

We also reject respondent's argument and the trial court's conclusion that the natural and probable consequences doctrine necessarily could not apply to Rodriguez. As we have discussed, CALJIC No. 3.02 instructed the jury that it could apply the natural and probable causes doctrine to "the defendant," and CALJIC No. 1.11 defined that term to include either defendant. Although CALJIC No. 3.02 included several modifications, it was not adjusted to apply only to Cambero, and the jury was not prohibited from using it to find Rodriguez guilty of attempted murder. Based on the record before us, we cannot exclude the possibility that the jury relied on the abrogated natural and probable consequences doctrine to convict Rodriguez.

Rodriguez is entitled to an evidentiary hearing under section 1172.6, subdivision (d), because the record of conviction does not conclusively establish that he is ineligible for relief.

15

## DISPOSITION

The July 6, 2023 order denying Rodriguez's petition for resentencing is reversed.  On remand, the trial court is directed to issue an order to show cause and to conduct further proceedings as necessary under section 1172.6, subdivision (d).


**NOT TO BE PUBLISHED IN THE OFFICIAL RECORDS**


BERSHON, J.*


We concur:


EDMON, P. J.


ADAMS, J.

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.